UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

DONALD RAY MIDDLEBROOKS,        )
                                )
            Petitioner,         )
                                )
v.                              )        No. 3:03-0814
                                )        Judge Echols
RICKY BELL, WARDEN,             )
                                )
            Respondent.         )

ORDER ON REMAND

This action was remanded to the district court on May 12, 2006 "for reconsideration of each claim raised by Middlebrooks in light of" *Slack v. McDaniel*, 529 U.S. 473 (2000). (Docket Entry No. 63 at 2).

In its Order, the Sixth Circuit wrote that "the district court failed to undertake an individualized determination of each claim in Middlebrooks habeas petition before denying him a certificate of appealability." (*Id.* at 2) The district court construes the Order of remand to require an individualized assessment of all of the petitioner's claims, those that were reached on the merits as well as those that were determined to have been procedurally defaulted for purposes of federal *habeas corpus* review.

I.   THE COURT'S ORDER OF REMAND

A.   **The Timing of the District Court's Denial of the Certificate of Appealability (COA)**

As an initial matter, the district court addresses the Order of remand itself. In its Order, the Sixth Circuit wrote that the district court entered its Order denying a COA "before Middlebrooks either applied for a certificate of appealability or filed a notice of appeal." (*Id.* at 1.) It appears from this statement that the Sixth Circuit finds fault with the district court's timing of its

Order denying a COA in Middlebrooks' case. The district court draws this conclusion from the fact that, apart from *Slack*, the only case cited by the Sixth Circuit is *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001), a case in which the Sixth Circuit appeared to suggest that it was impermissible to rule on a COA <u>before</u> an application had been made. *Id*. at 467. However, *Murphy* was later discredited on this point in *Castro v. United States*, 310 F.3d 900 (6th Cir. 2002) when another panel ruled that *Murphy* was in conflict with *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063 (6th Cir. 1997), an earlier case in which the Sixth Circuit ruled "that a district judge who has just denied a habeas petition . . . will have an intimate knowledge of both the record and the relevant law and could simply determine whether to issue the certificate of appealability when she denies the initial petition." *Castro*, 310 F.3d 901-902; *Lyons*, 105 F.3d 1072. Because one panel may not overrule another, *see Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985), and because the district court's timing was in accord with *Lyons*, the district court did not err in ruling that it would not issue a COA before a notice of appeal or an application for a COA had been filed. At the time of the district court's ruling, it had "an intimate knowledge of both the record and relevant law" and had carefully examined each of the petitioner's individual claims before denying the petitioner's certificate of appealability.

## B. The Blanket Denial Issue

The district court turns its attention next to the fact that it entered a "blanket denial" of Middlebrooks' claims. In

2

*Porterfield v. Bell*, 258 F.3d 484 (6th Cir. 2001), the district court entered a <u>blanket grant</u> for a COA after it had denied the petitioner's request for federal *habeas corpus* relief on all grounds, including "a number of claims" that were determined to have been procedurally defaulted. The Sixth Circuit remanded *Porterfield* because, "in granting a certificate of appealability as to all claims, the court did not provide us with any analysis to indicate that it had engaged in the two-pronged inquiry set forth in [*Slack*] as to each of the procedurally defaulted claims." *Id.* at 486. In addition, the Sixth Circuit also stated in dicta that:

> Since the enactment of AEDPA, this court has noted a disturbing lack of uniformity throughout the districts of our circuit with respect to how trial courts are to determine the extent to which certificates of appealability should issue*. **The approaches vary from a blanket grant as to all issues, as in this case, to blanket denials. Both of these approaches undermine the gate keeping function of certificates of appealability, which ideally should separate the constitutional claims that merit the close attention of counsel and this court from those claims that have little or no viability.** Moreover, because the district court is already deeply familiar with the claims raised by [the] petitioner, it is in a far better position from an institutional perspective than this court to determine which claims should be certified for appeal.

*Id*. at 487. Although the Sixth Circuit remanded *Porterfield* to the district court to "engage in the reasoned assessment of each procedurally defaulted claim as required by *Slack*," *Id*., the Sixth Circuit <u>did not</u> instruct the district court to conduct an individualized assessment of those claims that the district court had reached on the merits. In other words, although the Sixth Circuit opined on the one hand that blanket grants "undermined the gate keeping function of certificates of appealability" with

respect to procedurally defaulted claims, the Sixth Circuit appears to have been content with the district court's blanket treatment of those individual claims that had been decided on the merits.

In *Murphy*, *supra* at p. 2, decided the month after *Porterfield*, the district court had entered a blanket denial of a COA, having denied the petitioner's request for federal *habeas corpus* relief. *In Murphy*, the Sixth Circuit remanded the case to the district court for two reasons: first, because the district court denied a COA before the petitioner had even filed for one;[1] and second, quoting the *Porterfield* language above without elaboration, because the district court issued a blanket denial of a COA "as to all issues presented in the petition." *Murphy*, 263 F.3d at 467. More particularly, the Sixth Circuit stated that the district court had "failed to undertake [an] individualized determination of each claim presented by the petitioner . . . ." *Id.* Observing that "the district court effectively delegated the COA determination process to this Court," the Sixth Circuit remanded "the case for reconsideration of each claim raised in Murphy in light of *Slack*." *Id*. Once again, however, the Sixth Circuit appears to have been content with the district court's blanket treatment of those claims that the district court had decided on the merits.

Although both *Porterfield* and *Murphy* are held to stand for the proposition that the blanket treatment of COAs is disfavored, neither the *Porterfield* Court nor the *Murphy* Court gave effect to their stated disfavor of such treatment when it came to those

---

[1]As previously noted, *supra* at p. 2, this part of the ruling was later discredited in *Castro v. United States*.

4

claims that the district court had decided on the merits. More importantly, however, neither panel actually explained why <u>blanket denials</u> were as disfavored as <u>blanket grants</u>. The Sixth Circuit merely stated in both cases that "[b]oth of these approaches undermine the gate keeping function of certificates of appealability . . . ." *Porterfield*, 258 F.3d at 487; *Murphy*, 263 F.3d at 467. Absent any explanation, the Court's reasoning appears to be that what cuts one way cuts the other. However, as shown below, that reasoning does not stand up to scrutiny when it comes to <u>blanket denials</u>.

The first question is what exactly is the "gate keeping function" to which both *Porterfield* and *Murphy* refer. In *Miller-El v. Cockrell*, 537 U.S. 322 (2003), the Supreme Court provided the following descriptive overview of the AEDPA's "gate keeping function":

> ***Statutes such as the AEDPA have placed more, rather than fewer, restrictions on the power of federal courts*** to grant writs of habeas corpus to state prisoners. . . . The concept of threshold, or gateway, test was not the innovation of the AEDPA. Congress established a threshold prerequisite to appealability in 1908, in large part because it was '***concerned with the increasing number of frivolous habeas corpus petitions*** challenging capital sentences which delayed execution pending completion of the appellate process.'

*Id.* at 337 (emphasis added).

As already noted, in both *Porterfield* and *Murphy*, the Sixth Circuit wrote that <u>both</u> blanket grants and denials "undermine the gate keeping function of certificates of appealability, which ideally should separate the constitutional claims that merit close attention . . . from those claims that have little or no

5

viability." *Porterfield*, 258 F.3d at 487; *Murphy*, 263 F.3d at 467.
If the "gate keeping function" referred to in *Porterfield* and
*Murphy* is the same "gate keeping function" described by the Supreme
Court in *Miller-El*, then the "gate keeping function" in the context
of a COA is to prevent those issues without merit from surviving on
appeal, thereby delaying/impeding the *habeas corpus* process. Thus,
the question becomes do <u>both</u> blanket grants and blanket denials
really run counter to the Supreme Court's characterization of the
"gate keeping function" as described in *Miller-El*? In other words,
do both increase the potential for unwarranted *habeas corpus*
litigation. As show below, the answer is "No!"

     It is readily apparent why a blanket grant undermines the
AEDPA's "gate keeping function" in those instances when a district
court has denied a *habeas corpus* petition. First, it is difficult
to imagine that every claim in a *habeas corpus* action would be
meritorious, especially when numerous issues are presented for
review. Thus, a blanket grant increases the likelihood that non-
meritorious claims will survive on appeal. This clearly undermines
the AEDPA's "gate keeping function." Second, but even more
important, when the district court denies *habeas corpus* relief, the
legal reasoning in the court's memorandum/opinion supports that
decision. Therefore, absent a separate analysis there is unlikely
to be anything in the district court's memorandum/opinion to deny
*habeas corpus* relief that would assist the appellate court in
determining why the district court then turned around and granted
the COA. As explained in *Lyons*, *supra* at p. 2, this would lead to
the situation where "[c]ircuit judges . . . would have to obtain

Case 3:03-cv-00814   Document 66   Filed 03/08/07   Page 6 of 31 PageID #: 449

and then spend time familiarizing themselves with the often chaotic records and pro se briefs before they could evaluate requests for certificates." *Lyons*, 105 F.3d 1072. As the Sixth Circuit stated, the district court is in a "far better position from an institutional perspective than this court to determine which claims should be certified." *Porterfield*, 259 F.3d at 487; *Murphy*, 263 F.3d at 467.

It is clear from the foregoing why blanket grants are disfavored. As shown below, blanket denials of COAs are not the flip-side of the blanket-grant coin.

Unlike the situation where a blanket grant has been issued, when the district court denies *habeas* relief and then enters a blanket denial of a COA, the legal reasoning for denying the COA is before the appellate court without the need for further elaboration – it is the legal analysis contained in the district court's memorandum/opinion providing the basis for denying the *habeas corpus* petition. This holds true for those claims addressed on the merits as well as those that were deemed procedurally defaulted for purposes of federal *habeas corpus* review. In other words, whereas a blanket grant flies in the face of the district court's decision to deny a *habeas corpus* petition, a blanket denial finds its justification in the district court's memorandum/opinion.

Inasmuch as blanket denials prevent meritless claims from going forward on appeal, such grants are entirely consistent with the AEDPA's "gate keeping function" as characterized in *Miller-El*. Moreover, blanket denials do not constitute a *pro forma* denial when an "individualized determination" is provided in the district

7

court's memorandum/opinion as to each and every claim, those addressed on the merits as well as those determined to be procedurally defaulted for purposes of federal *habeas corpus* review. Finally, unlike the blanket grant of a certificate of appealability after the *habeas corpus* petition has been denied, a blanket denial does not require circuit judges to spend time familiarizing themselves with the record and struggling to infer from the district court's memorandum/opinion why a COA was denied. All that is required is for the appellate court to read the district court's memorandum/opinion addressing the individual claims.

As shown above, blanket denials do not suffer the inherent defects as blanket grants. Under the circumstances of a blanket denial, the only thing that needs to be done is to apply the appropriate standard in denying the COA, incorporating by reference the district court's legal analysis of the individual claims in its memorandum/opinion. Support for this notion is found in *Lyons* itself where the Sixth Circuit wrote:

> [I]t seems clear that a district judge who has just denied a habeas petition will be able to evaluate that petitioner's request for a certificate of appealability more quickly than would a circuit judge fresh to the case. **The district judge** will have an intimate knowledge of both the record and the relevant law and **could simply determine whether to issue the certificate of appealability when she denies the initial petition**.

*Lyons*, 105 F.3d at 1072 (emphasis added). In other words, having already made an "individualized determination" as to each and every claim in its memorandum/opinion, the district judge – with his or her intimate knowledge of the case – could simply determine that a

8

COA was inappropriate as to all issues, a not-uncommon outcome in *habeas corpus* actions.

Additional support for the blanket denial is found in the Sixth Circuit's own Administrative Order pertaining to COAs. The month following its decision in *Lyons*, the Sixth Circuit adopted an administrative order pertaining to COAs and based its opinion on *Lyons*. *In re Certificates of Appealability*, 106 F.3d 1306 (6th Cir. 1997). There the Sixth Circuit wrote – with respect to those cases on appeal pending its decision in *Lyons* – "a remand is not necessary **if, in denying a certificate of appealability, the district court clearly established that it denied all of the issues** raised in the habeas petition." *Id*. at 1307 (emphasis added). There is nothing in this statement, or anything else in the administrative order, that supports the conclusion that blanket denials are disfavored. There also is nothing in this statement, or anything in the administrative order, that supports the conclusion that, where a district court already has addressed each and every claim in its memorandum/opinion, the district court is then required to repeat each and every claim in a <u>separate</u> "individualized determination" to explain again why a COA will <u>not</u> issue. In this case, this Court has written 78 pages of factual analysis and reasons why each of the numerous individualized claims of the petitioner should be denied and why a COA should not issue. As the Sixth Circuit observed in *Lyons*, one of the purposes of the AEDPA is to "streamline the habeas corpus process, particularly in capital cases, without violating prisoners' due process rights." *Lyons*, 105 F.3d at 1072. Requiring the district court to address

Case 3:03-cv-00814   Document 66   Filed 03/08/07   Page 9 of 31 PageID #: 452

each claim separately when it already has done so does not add to the clarity of the district court's ruling, nor does it streamline the *habeas corpus* process.  In fact, it does the opposite.

For the reasons explained above, this court respectfully disagrees with the Sixth Circuit that blanket denials are inappropriate when they are accompanied by appropriate analysis and reasoning of the claims to support its decision or that such blanked denials infringe in any way on a *habeas corpus* petitioner's due process rights.  Having addressed the admonishments in the remand, as well as the disparity in the Sixth Circuit's reasoning on the "blanket grant-blanket denial" issue, the district court turns its attention next to the task at hand – to "undertake an individualized determination of each claim in Middlebrooks habeas petition . . . ."

## C. Analysis

When the district court denies a ground for relief on the merits, a COA "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the standard being whether "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Slack*, 529 U.S. at 484; *see Barefoot v. Estelle*, 463 U.S. 880, 893 and n.4 (1983).  Where the district court denies *habeas* relief on procedural grounds without reaching the underlying constitutional claim, a COA may issue only if "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right" <u>and</u> that "jurists of reason would find it debatable whether

10

the district court was correct in its procedural ruling." *Id.*
With respect to claims that are dismissed on procedural grounds,
the Supreme Court noted further that:

> Each component of the § 2253(c) showing is part of a
> threshold inquiry, and a court may find that it can
> dispose of the application in a fair and prompt manner if
> it proceeds first to resolve the issue whose answer is
> more apparent from the record and arguments. The
> recognition that the "Court will not pass upon a
> constitutional question although properly presented by
> the record, if there is also some other ground upon which
> the case may be disposed of" . . . allows and encourages
> the court to first resolve procedural issues.

*Id.* at 485 (citing *Ashwander v. TVA*, 297 U.S. 288 (1936)). In
other words, if the district court determines that an issue is
procedurally defaulted, then the district court is not required to
address the issue on the merits.

The following claims were raised in Middlebrooks' amended
petition for federal *habeas corpus* relief. (Docket Entry No. 27).
The claims are presented in the order that they were addressed in
the Memorandum (Docket Entry No. 58) that accompanied the Order in
which the district court ruled that a COA would not issue (Docket
Entry No. 59).

### 1. Whether Counsel Provided Ineffective Assistance

**¶ III.9.a.** Defense counsel were ineffective for not
investigating and presenting evidence that Middlebrooks suffered
from a seizure disorder, mental illness, and a brain injury.
(Docket Entry No. 27 at 4-7). The district court determined that
this unexhausted claim was procedurally defaulted for purposes of
federal *habeas corpus* review. (Docket Entry No. 58 at 21-22, 25-
28). Because jurists of reason would not find it debatable that
the district court was correct in its procedural ruling, a COA will
not issue as to this claim.

**¶ III.9.b.** Defense counsel were ineffective because they
failed to investigate Middlebrooks' history of physical and sexual
abuse and his mental illness that stemmed from that abuse. (Docket
Entry No. 27 at 7-8). The district court determined that this

11

unexhausted claim was procedurally defaulted for purposes of federal *habeas corpus* review. (Docket Entry No. 58 at 21-22, 25-28). Because jurists of reason would not find it debatable that the district court was correct in its procedural ruling, a COA will not issue as to this claim.

¶ **III.9.c.** Defense counsel were ineffective because they failed to argue to the jury that the death sentence was improper because co-defendant Roger Brewington only received a life sentence. (Docket Entry No. 27 at 8). The district court determined that this unexhausted claim was procedurally defaulted for purposes of federal *habeas corpus* review. (Docket Entry No. 58 at 21-22, 25-28). Because jurists of reason would not find it debatable that the district court was correct in its procedural ruling, a COA will not issue as to this claim.

¶ **III.9.d.** Defense counsel were ineffective for not recognizing, investigating, pursuing, developing, and presenting mitigating evidence that co-defendant Brewington exercised dominance over Middlebrooks. (Docket Entry No. 27 at 8-9). The district court determined that this unexhausted claim was procedurally defaulted for purposes of federal *habeas corpus* review. (Docket Entry No. 58 at 21-22, 25-28). Because jurists of reason would not find it debatable that the district court was correct in its procedural ruling, a COA will not issue as to this claim.

¶ **III.9.e.** Defense counsel were ineffective for not adequately preparing for the testimony of its expert, Dr. Smalldon. (Docket Entry No. 27 at 9). The district court determined that the Tennessee Court of Criminal Appeals ("the Court of Criminal Appeals") determination of this issue was neither contrary to nor an unreasonable application of *Strickland v. Washington*, 466 U.S. 668 (1984). (Docket Entry No. 58 at 29-31). Because Middlebrooks has not made a substantial showing of the denial of a constitutional right, a COA will not issue with respect to this claim.

¶ **III.9.f.** Defense counsel were ineffective for not communicating and coordinating between counsel which resulted in a failure to develop a "reasonable" trial strategy. (Docket Entry No. 27 at 9). The district court determined that this waived claim was procedurally defaulted for purposes of federal *habeas corpus* review. (Docket Entry No. 58 at 22-28). Because jurists of reason would not find it debatable that the district court was correct in its procedural ruling, a COA will not issue as to this claim.

¶ **III.9.g.** Defense counsel were ineffective for failing to move for expert assistance. (Docket Entry No. 27 at 9). The district court determined that this waived claim was procedurally defaulted for purposes of federal *habeas corpus* review. (Docket Entry No. 58 at 22-28) Because jurists of reason would not find it

12

debatable that the district court was correct in its procedural ruling, a COA will not issue as to this claim.

¶ **III.9.h.** Defense counsel were ineffective for failing to make appropriate objections to the cross-examination of the defense expert. (Docket Entry No. 27 at 9). The district court determined that this waived claim was procedurally defaulted for purposes of federal *habeas corpus* review. (Docket Entry No. 58 at 22-28). Because jurists of reason would not find it debatable that the district court was correct in its procedural ruling, a COA will not issue as to this claim.

¶ **III.9.i.** Defense counsel were ineffective for failing to object to the prosecution's final argument. (Docket Entry No. 27 at 9). The district court determined that this waived claim was procedurally defaulted for purposes of federal *habeas corpus* review. (Docket Entry No. 58 at 22-28). Because jurists of reason would not find it debatable that the district court was correct in its procedural ruling, a COA will not issue as to this claim.

¶ **III.9.j.** Defense counsel were ineffective for not adequately investigating Middlebrooks' mental state. (Docket Entry No. 27 at 9). The district court determined that this waived claim was procedurally defaulted for purposes of federal *habeas corpus* review. (Docket Entry No. 58 at 22-28). Because jurists of reason would not find it debatable that the district court was correct in its procedural ruling, a COA will not issue as to this claim.

¶ **III.9.k.** Defense counsel were ineffective for failing to communicate adequately with the defense expert and to provide him with accurate information about Middlebrooks' background and mental health. (Docket Entry No. 27 at 9). The district court determined that this waived claim was procedurally defaulted for purposes of federal *habeas corpus* review. (Docket Entry No. 58 at 22-28). Because jurists of reason would not find it debatable that the district court was correct in its procedural ruling, a COA will not issue as to this claim.

¶ **III.9.l.** Defense counsel were ineffective for failing to communicate sufficiently with/prepare the defense expert witness. (Docket Entry No. 27 at 9). The district court determined that this waived claim was procedurally defaulted for purposes of federal *habeas corpus* review. (Docket Entry No. 58 at 22-28). Because jurists of reason would not find it debatable that the district court was correct in its procedural ruling, a COA will not issue as to this claim.

¶ **III.9.m.** Defense counsel were ineffective for failing to investigate, request, and obtain expert testimony to rebut the cross-examination of the prosecution about psychological tests administered to Middlebrooks. (Docket Entry No. 27 at 9-10). The district court determined that this waived claim was procedurally

13

defaulted for purposes of federal *habeas corpus* review. (Docket Entry No. 58 at 22-28). Because jurists of reason would not find it debatable that the district court was correct in its procedural ruling, a COA will not issue as to this claim.

**¶ III.9.n.** Defense counsel were ineffective for failing to investigate and inform the defense expert of all relevant matters pertaining to Middlebrooks' background and mental state. (Docket Entry No. 27 at 10). The district court determined that this waived claim was procedurally defaulted for purposes of federal *habeas corpus* review. (Docket Entry No. 58 at 22-28). Because jurists of reason would not find it debatable that the district court was correct in its procedural ruling, a COA will not issue as to this claim.

**¶ III.9.o.** Defense counsel were ineffective for failing to request a complete written report from the defense expert. (Docket Entry No. 27 at 10). The district court determined that this waived claim was procedurally defaulted for purposes of federal *habeas corpus* review. (Docket Entry No. 58 at 22-28). Because jurists of reason would not find it debatable that the district court was correct in its procedural ruling, a COA will not issue as to this claim.

**¶ III.9.p.** Defense counsel were ineffective for failing to investigate and develop appropriate statics and strategy to rebut the State's rebuttal witnesses. (Docket Entry No. 27 at 10). The district court determined that this waived claim was procedurally defaulted for purposes of federal *habeas corpus* review. (Docket Entry No. 58 at 22-28). Because jurists of reason would not find it debatable that the district court was correct in its procedural ruling, a COA will not issue as to this claim.

**¶ III.9.q.** Defense counsel were ineffective for failing to investigate adequately and to present evidence as to the culpability of the two co-defendants and the effect that they had on Middlebrooks' mental state. (Docket Entry No. 27 at 10). The district court determined that this waived claim was procedurally defaulted for purposes of federal *habeas corpus* review. (Docket Entry No. 58 at 22-28). Because jurists of reason would not find it debatable that the district court was correct in its procedural ruling, a COA will not issue as to this claim.

**¶ III.9.r.** Defense counsel were ineffective for failing to investigate and develop evidence to suppress Middlebrooks' statements to the police. (Docket Entry No. 27 at 10). The district court determined that this waived claim was procedurally defaulted for purposes of federal *habeas corpus* review. (Docket Entry No. 58 at 22-28). Because jurists of reason would not find it debatable that the district court was correct in its procedural ruling, a COA will not issue as to this claim.

14

¶ **III.9.s.** Defense counsel were ineffective for failure to make sufficient objections to the presence of the victim's mother at the table for the prosecution and her behavior during the trial. (Docket Entry No. 27 at 10). The district court determined that this waived claim was procedurally defaulted for purposes of federal *habeas corpus* review. (Docket Entry No. 58 at 22-28). Because jurists of reason would not find it debatable that the district court was correct in its procedural ruling, a COA will not issue as to this claim.

¶ **III.9.t.** Defense counsel were ineffective for failure to object to charging the jury pursuant to the statutory language which prevented the jury from listening to and giving effect to all mitigating evidence. (Docket Entry No. 27 at 10). The district court determined that this waived claim was procedurally defaulted for purposes of federal *habeas corpus* review. (Docket Entry No. 58 at 22-28). Because jurists of reason would not find it debatable that the district court was correct in its procedural ruling, a COA will not issue as to this claim.

¶ **III.9.u.** Defense counsel were ineffective for failure to object to testimony as to the details of the murder. (Docket Entry No. 27 at 10). The district court determined that this waived claim was procedurally defaulted for purposes of federal *habeas corpus* review. (Docket Entry No. 58 at 22-28). Because jurists of reason would not find it debatable that the district court was correct in its procedural ruling, a COA will not issue as to this claim.

¶ **III.9.v.** Defense counsel were ineffective for failure to investigate and develop evidence pertaining to Middlebrooks' racial attitude and to rebut the States' evidence regarding those attitudes. (Docket Entry No. 27 at 10). The district court determined that this waived claim was procedurally defaulted for purposes of federal *habeas corpus* review. (Docket Entry No. 58 at 22-28). Because jurists of reason would not find it debatable that the district court was correct in its procedural ruling, a COA will not issue as to this claim.

¶ **III.9.w.** Defense counsel were ineffective for failing to *voir dire* the jury adequately to determine whether the potential jurors had any opinions that would interfere with their ability to follow the law. (Docket Entry No. 27 at 11). The district court determined that this waived claim was procedurally defaulted for purposes of federal *habeas corpus* review. (Docket Entry No. 58 at 22-28). Because jurists of reason would not find it debatable that the district court was correct in its procedural ruling, a COA will not issue as to this claim.

¶ **III.9.x.** Defense counsel were ineffective for not following up on issues raised in the jury questionnaire. (Docket Entry No. 27 at 11). The district court determined that this unexhausted

claim was procedurally defaulted for purposes of federal *habeas corpus* review. (Docket Entry No. 58 at 21-22, 25-28). Because jurists of reason would not find it debatable that the district court was correct in its procedural ruling, a COA will not issue as to this claim.

**¶ III.9.x.**[2] Defense counsel were ineffective for failing to "strike" juror Moore because of her religious views pertaining to the death penalty and because her view that the basis of the death penalty was deterrence. (Docket Entry No. 27 at 11). The district court determined that this unexhausted claim was procedurally defaulted for purposes of federal *habeas corpus* review. (Docket Entry No. 58 at 21-22, 25-28). Because jurists of reason would not find it debatable that the district court was correct in its procedural ruling, a COA will not issue as to this claim.

**¶ III.9.y.** Defense counsel were ineffective for not challenging juror Margolis when he stated that he would impose the death sentence if Middlebrooks could be paroled. (Docket Entry No. 27 at 11). The district court determined that this unexhausted claim was procedurally defaulted for purposes of federal *habeas corpus* review. (Docket Entry No. 58 at 21-22, 25-28). Because jurists of reason would not find it debatable that the district court was correct in its procedural ruling, a COA will not issue as to this claim

**¶ III.9.z.** Defense counsel were ineffective for failing to investigate and introduce proof of a "lack of narrowing under the Tennessee death penalty statutes." (Docket Entry No. 27 at 11). The district court determined that this waived claim was procedurally defaulted for purposes of federal *habeas corpus* review. (Docket Entry No. 58 at 22-28). Because jurists of reason would not find it debatable that the district court was correct in its procedural ruling, a COA will not issue as to this claim.

**¶ III.9.aa.** Defense counsel were ineffective for failing to investigate and introduce proof that electrocution constitutes cruel and unusual punishment. (Docket Entry No. 27 at 11). The district court determined that this waived claim was procedurally defaulted for purposes of federal *habeas corpus* review. (Docket Entry No. 58 at 22-28). Because jurists of reason would not find it debatable that the district court was correct in its procedural ruling, a COA will not issue as to this claim.

**¶ III.9.bb.** Defense counsel were ineffective for failing to challenge the constitutionality of the heinous, atrocious, or cruel aggravating circumstance. (Docket Entry No. 27 at 11). The district court determined that this waived claim was procedurally

---

[2]Two ineffective assistance claims are mistakenly labeled "x" on p. 11 of the amended petition.

defaulted for purposes of federal *habeas corpus* review. (Docket Entry No. 58 at 22-28). Because jurists of reason would not find it debatable that the district court was correct in its procedural ruling, a COA will not issue as to this claim.

**¶ III.9.cc.** Defense counsel were ineffective for failing to move for the assistance of a neurologist to test and provide expert testimony regarding the effect of Middlebrooks' brain damage. (Docket Entry No. 27 at 11-12). The district court determined that this waived claim was procedurally defaulted for purposes of federal *habeas corpus* review. (Docket Entry No. 58 at 22-28). Because jurists of reason would not find it debatable that the district court was correct in its procedural ruling, a COA will not issue as to this claim.

**¶ III.9.dd.** Defense counsel were ineffective for failing to review Dr. Smalldon's findings adequately. (Docket Entry No. 27 at 12). The district court determined that this waived claim was procedurally defaulted for purposes of federal *habeas corpus* review. (Docket Entry No. 58 at 22-28). Because jurists of reason would not find it debatable that the district court was correct in its procedural ruling, a COA will not issue as to this claim.

**¶ III.9.ee.** Defense counsel were ineffective for calling Dr. Smalldon as a mitigation witness. (Docket Entry No. 27 at 12). The district court determined that this waived claim was procedurally defaulted for purposes of federal *habeas corpus* review. (Docket Entry No. 58 at 22-28). Because jurists of reason would not find it debatable that the district court was correct in its procedural ruling, a COA will not issue as to this claim.

**¶ III.9.ff.** Defense counsel were ineffective for failing to develop a reasonable mitigation theory or presentation. (Docket Entry No. 27 at 12). The district court determined that this waived claim was procedurally defaulted for purposes of federal *habeas corpus* review. (Docket Entry No. 58 at 22-28). Because jurists of reason would not find it debatable that the district court was correct in its procedural ruling, a COA will not issue as to this claim.

**¶ III.9.gg.** Defense counsel were ineffective for failure to adequately investigate and present evidence of the involvement of the other two co-defendants. (Docket Entry No. 27 at 12). The district court determined that this waived claim was procedurally defaulted for purposes of federal *habeas corpus* review. (Docket Entry No. 58 at 22-28). Because jurists of reason would not find it debatable that the district court was correct in its procedural ruling, a COA will not issue as to this claim.

**¶ III.9.hh.** Defense counsel were ineffective because they failed to recognize, investigate, pursue, develop, and present mitigating evidence as to co-defendant Brewington's dominance over

17

Middlebrooks. (Docket Entry No. 27 at 12). The district court determined that the Court of Criminal Appeals' determination of this issue was neither contrary to nor an unreasonable application of *Strickland v. Washington*, 466 U.S. 668 (1984). (Docket Entry No. 58 at 31-38). Because Middlebrooks has not made a substantial showing of the denial of a constitutional right, a COA will not issue with respect to this claim.

¶ **III.9.ii.** Defense counsel were ineffective for not presenting fifteen specific elements of mitigating evidence related to co-defendant Brewington. (Docket Entry No. 27 at 12-14). The district court determined that this unexhausted claim was procedurally defaulted for purposes of federal *habeas corpus* review. (Docket Entry No. 58 at 21-22, 25-28). Because jurists of reason would not find it debatable that the district court was correct in its procedural ruling, a COA will not issue as to this claim.

¶ **III.9.jj.** Defense counsel were ineffective for failure to adequately communicate, review, and prepare as a team. (Docket Entry No. 27 at 14). The district court determined that this waived claim was procedurally defaulted for purposes of federal *habeas corpus* review. (Docket Entry No. 58 at 22-28). Because jurists of reason would not find it debatable that the district court was correct in its procedural ruling, a COA will not issue as to this claim.

¶ **III.9.kk.** Defense counsel were ineffective for failure to cross examine witnesses Watson and Stewart properly regarding Middlebrooks' statements to the victim. (Docket Entry No. 27 at 14). The district court determined that this waived claim was procedurally defaulted for purposes of federal *habeas corpus* review. (Docket Entry No. 58 at 22-28). Because jurists of reason would not find it debatable that the district court was correct in its procedural ruling, a COA will not issue as to this claim.

¶ **III.9.ll.** Defense counsel were ineffective for failure to object to the testimony of the prosecution's witness, Dr. McElroy, and for failure to object to Dr. McElroy testifying as an expert without being tendered or accepted as such. (Docket Entry No. 27 at 14). The district court determined that this waived claim was procedurally defaulted for purposes of federal *habeas corpus* review. (Docket Entry No. 58 at 22-28). Because jurists of reason would not find it debatable that the district court was correct in its procedural ruling, a COA will not issue as to this claim.

¶ **III.9.mm.** Defense counsel were ineffective for failing to object and/or preserve ten specific issues for appeal. (Docket Entry No. 27 at 15). The district court determined that this waived claim was procedurally defaulted for purposes of federal *habeas corpus* review. (Docket Entry No. 58 at 22-28). Because jurists of reason would not find it debatable that the district

18

court was correct in its procedural ruling, a COA will not issue as to this claim.

**¶ III.9.nn.**  Defense and appellate counsel were ineffective for not objecting in a timely fashion or otherwise preserving for and presenting on appeal all of the claims presented in the instant action.  (Docket Entry No. 27 at 15-16).  The district court determined that this unexhausted claim was procedurally defaulted for purposes of federal *habeas corpus* review.  (Docket Entry No. 58 at 21-22, 25-28).  Because jurists of reason would not find it debatable that the district court was correct in its procedural ruling, a COA will not issue as to this claim.

## 2. Whether the Petitioner Was Prevented from Presenting a Defense and from Confronting Witnesses[3]

**¶ III.9.a.**  The trial court erred in preventing Middlebrooks from presenting evidence that the prosecution did not call the co-defendants to testify.  (Docket Entry No. 17 at 16-17).  The district court determined that this waived claim was procedurally defaulted for purposes of federal *habeas corpus* review.  (Docket Entry No. 58 at 39-40).  Because jurists of reason would not find it debatable that the district court was correct in its procedural ruling, a COA will not issue as to this claim.

**¶ III.9.b.**  The trial court erred in preventing Middlebrooks from "confronting and cross-examining a key witness," *i.e.*, Shannon Stewart.  (Docket Entry No. 27 at 17).  The district court determined that the Tennessee Supreme Court's determination of this issue was neither contrary to nor an unreasonable application of *Chapman* v. *California*, 386 U.S. 18 (1967), *Pennsylvania v. Ritchie*, 480 U.S. 39 (1987), or *Davis v. Alaska*, 451 U.S. 308, 318 (1974).  (Docket Entry No. 58 at 40-41).  Because Middlebrooks has not made a substantial showing of the denial of a constitutional right, a COA will not issue with respect to this claim.

## 3. Whether the Prosecution Failed to Disclose Exculpatory Evidence

**¶ III.10.a.**  The prosecution withheld evidence that Middlebrooks had been using drugs before and at the time of the offense.  (Docket Entry No. 27 at 18).  The district court determined that this unexhausted claim was procedurally defaulted for purposes of federal *habeas corpus* review.  (Docket Entry No. 58 at 42).  Because jurists of reason would not find it debatable that the district court was correct in its procedural ruling, a COA will not issue as to this claim.

---

[3]The petitioner misnumbered this claim as claim "9."

**¶ III.10.b.**  The prosecution failed to disclose evidence of Middlebrooks' mental state before, during, and after the offense. (Docket Entry No. 27 at 18).  The district court determined that this waived claim was procedurally defaulted for purposes of federal *habeas corpus* review.  (Docket Entry No. 58 at 42-44). Because jurists of reason would not find it debatable that the district court was correct in its procedural ruling, a COA will not issue as to this claim.

**¶ III.10.c.**  The prosecution withheld exculpatory evidence demonstrating the lack of reliability and credibility of the Davidson County Medical Examiner's (Dr. Harlan) testimony that the prosecution knew or should have known was false.  (Docket Entry No. 27 at 18-25).  The district court determined that this waived claim was procedurally defaulted for purposes of federal *habeas corpus* review.  (Docket Entry No. 51).  Because jurists of reason would not find it debatable that the district court was correct in its procedural ruling, a COA will not issue as to this claim.

**¶ III.10.d.**  The prosecution failed to disclose physical evidence that could have demonstrated that the killing did not occur in the manner argued by the State.  (Docket Entry No. 27 at 25).  The district court determined that this waived claim was procedurally defaulted for purposes of federal *habeas corpus* review.  (Docket Entry No. 58 at 42-44).  Because jurists of reason would not find it debatable that the district court was correct in its procedural ruling, a COA will not issue as to this claim.

**¶ III.10.e.**  The prosecution failed to reveal all promises, deals, agreements, and understandings made by or on behalf of witnesses for the State.  (Docket Entry No. 27 at 25).  The district court determined that this waived claim was procedurally defaulted for purposes of federal *habeas corpus* review.  (Docket Entry No. 58 at 42-44).  Because jurists of reason would not find it debatable that the district court was correct in its procedural ruling, a COA will not issue as to this claim.

4.    **Whether Middlebrooks' Inculpatory Statements Should Have Been Suppressed**

**¶ III.11.**  Middlebrooks inculpatory statements should have been suppressed because he was denied his right to counsel and his right to remain silent.  (Docket Entry No. 27 at 25-28).  The district court determined that the Tennessee Supreme Court's determination of this issue was neither contrary to nor an unreasonable application of *Miranda v. Arizona*, 384 U.S. 436 (1966) or *Oregon v. Allstate*, 470 U.S. 298 (1985).  (Docket Entry No. 58 at 45-47).  The district court also determined that the Tennessee Supreme Court's determination was not an unreasonable determination of the facts given the evidence presented in the state court proceedings.  (Docket Entry No. 28 at 47).  Because Middlebrooks has not made a substantial showing of the denial of a

20

constitutional right, a COA will not issue with respect to this
claim.

### 5. Whether the Trial Court Erred in Not Excluding a Tainted Juror

¶ **III.12.** The participation of juror Alexander, whose wife
and two children were murdered in 1993, denied Middlebrooks of an
"unbiased, impartial, and fully competent" jury. (Docket Entry
No. 27 at 29-30). The district court determined that this
unexhausted claim was procedurally defaulted for purposes of
federal *habeas corpus* review. (Docket Entry No. 58 at 47-51).
Because jurists of reason would not find it debatable that the
district court was correct in its procedural ruling, a COA will not
issue as to this claim.

### 6. Whether the Prosecution Engaged in Misconduct

¶ **III.13.a**. The prosecutor made a false statement when he
told the jury that he could not present the testimony of the co-
defendants without a plea bargain. (Docket Entry No. 27 at 29).
The district court determined that this unexhausted claim was
procedurally defaulted for purposes of federal *habeas corpus*
review. (Docket Entry No. 58 at 52). Because jurists of reason
would not find it debatable that the district court was correct in
its procedural ruling, a COA will not issue as to this claim.

¶ **III.13.b.** At sentencing, the prosecution introduced
"irrelevant, inflammatory evidence" that the murder was race
motivated. (Docket Entry No. 27 at 29-30). The district court
determined that the Tennessee Supreme Court's determination of this
issue was neither contrary to nor an unreasonable application of
clearly established federal law as established by Supreme Court
precedent. (Docket Entry No. 58 at 53-54). The district court
also determined that the Tennessee Supreme Court's determination
was not an unreasonable determination of the facts given the
evidence presented in the state court proceedings. (Docket Entry
No. 58 at 54). Because Middlebrooks has not made a substantial
showing of the denial of a constitutional right, a COA will not
issue with respect to this claim.

¶ **III.13.c**. In closing arguments, the prosecutor improperly
argued that the jury should vote for death based on the wishes of
the victim's family and the wishes of the prosecutor's office.
(Docket Entry No. 27 at 30). The district court determined that
the Tennessee Supreme Court's determination of this issue was
neither contrary to nor an unreasonable application of clearly
established federal law as established by Supreme Court precedent.
(Docket Entry No. 58 at 54-56). The district court also determined
that the Tennessee Supreme Court's determination was not an
unreasonable determination of the facts given the evidence
presented in the state court proceedings. (Docket Entry No. 28 at

21

56).  Because Middlebrooks has not made a substantial showing of
the denial of a constitutional right, a COA will not issue with
respect to this claim.

¶ **III.13.d.**  The prosecutor made improper biblical references
in his closing argument.  (Docket Entry No. 27 at 30-31).  The
district court determined that the Tennessee Supreme Court's
determination of this issue was neither contrary to nor an
unreasonable application of clearly established federal law as
established by Supreme Court precedent.  (Docket Entry No. 58 at
56-57).  The district court also determined that the Tennessee
Supreme Court's determination was not an unreasonable determination
of the facts given the evidence presented in the state court
proceedings.  (Docket Entry No. 28 at 57).  Because Middlebrooks
has not made a substantial showing of the denial of a
constitutional right, a COA will not issue with respect to this
claim.

¶ **III.13.e.**  The prosecutor improperly argued that
Middlebrooks' death sentence should be based on the actions of co-
defendant Brewington.  (Docket Entry No. 27 at 31).  The district
court determined that this unexhausted claim was procedurally
defaulted for purposes of federal *habeas corpus* review.  (Docket
Entry No. 58 at 57).  Because jurists of reason would not find it
debatable that the district court was correct in its procedural
ruling, a COA will not issue as to this claim.

### 7.    Whether the Trial Court Erred by Not Instructing the Jury on Middlebrooks' Ineligibility for Parole

¶ **III.14.**    The trial court erred in not instructing the jury
regarding Middlebrooks parole ineligibility.  (Docket Entry No. 27
at 31).  The district court determined that this unexhausted claim
was procedurally defaulted for purposes of federal *habeas corpus*
review.  (Docket Entry No. 58 at 58).  Because jurists of reason
would not find it debatable that the district court was correct in
its procedural ruling, a COA will not issue as to this claim.

### 8.    Whether the Jury Instructions Lessened the Prosecution's Burden of Proof

¶ **III.15.a.**  The jury convicted Middlebrooks "without being
instructed on, or specifically finding, the element of malice."
(Docket Entry No. 27 at 31).  The district court determined that
this unexhausted claim was procedurally defaulted for purposes of
federal *habeas corpus* review.  (Docket Entry No. 58 at 59, 64-76).
Because jurists of reason would not find it debatable that the
district court was correct in its procedural ruling, a COA will not
issue as to this claim.

¶ **III.15.b.**  The jury was instructed that it could convict
Middlebrooks "based upon a mere 'moral certainty.'"  (Docket Entry

No. 27 at 32). The district court determined that this unexhausted claim was procedurally defaulted for purposes of federal *habeas corpus* review. (Docket Entry No. 58 at 59, 64-67). Because jurists of reason would not find it debatable that the district court was correct in its procedural ruling, a COA will not issue as to this claim.

**¶ III.15.c.** The jury instructions at sentencing permitted the finding of aggravating circumstances "so long as jurors could let the mind rest easily that . . . such circumstances existed," and by excluding "'possible' doubts" from their consideration. (Docket Entry No. 27 at 32). The district court determined that there was no constitutional infirmity with respect to this claim. (Docket Entry No. 58 at 59, 60-64). Because Middlebrooks has not made a substantial showing of the denial of a constitutional right, a COA will not issue with respect to this claim.

### 9. Whether the Heinous, Atrocious, or Cruel (HAC) Aggravating Circumstance is Unconstitutional

**¶ III.16.c.**[4] The HAC aggravating circumstance weighed by the jury was unconstitutionally vague. (Docket Entry No. 27 at 32). The district court concluded that, in light of *Bell v. Cone*, 543 U.S. 447 (2005), the Tennessee Supreme Court's determination on this issue was neither contrary to nor involved a reasonable application of clearly established law, nor was it based on an unreasonable determination of the facts given the evidence presented in the state court proceedings. (Docket Entry No. 58 at 68-71). Because Middlebrooks has not made a substantial showing of the denial of a constitutional right, a COA will not issue with respect to this claim.

**¶ III.16.e.** The grand jury did not determine that the HAC aggravating circumstance was present; therefore, it was improper for the jury to base the death sentence on the HAC aggravator. (Docket Entry No. 27 at 71). The district court determined that this unexhausted claim was procedurally defaulted for purposes of federal *habeas corpus* review. (Docket Entry No. 58 at 71). Because jurists of reason would not find it debatable that the district court was correct in its procedural ruling, a COA will not issue as to this claim.

### 10. Whether Middlebrooks' Death Sentence is Disproportionate

**¶ III.17.** Middlebrooks' death penalty is disproportionate because co-defendant Brewington was more culpable. (Docket Entry No. 27 at 33). The district court determined that this claim was non-cognizable because comparative proportionality review of death

---

[4]Sub-paragraphs a, b, and d do not set forth claims for *habeas corpus* relief.

sentences in Tennessee is a creation of Tennessee statute and is not mandated by the U.S. Constitution. (Docket Entry No. 58 at 72). Because Middlebrooks has not made a substantial showing of the denial of a constitutional right, a COA will not issue with respect to this claim.

**11. Whether Cumulative Error Violated Middlebrooks' Due Process Rights**

¶ **III.18.** The cumulative effect of errors at trial violated Middlebrooks' due process rights. (Docket Entry No. 27 at 33). The district court determined that this unexhausted claim was procedurally defaulted for purposes of federal *habeas corpus* review. (Docket Entry No. 58 at 72). Because jurists of reason would not find it debatable that the district court was correct in its procedural ruling, a COA will not issue as to this claim.

**12. Whether Tennessee's Death Penalty Statute and Sentencing Instructions are Unconstitutional**

¶ **III.19.a.** Tennessee's death penalty statue and sentencing instructions provide insufficient guidance on who has the burden of proof. (Docket Entry No. 27 at 34). The district court concluded that the Court of Criminal Appeals' determination was neither contrary to nor an unreasonable application of federal law as established by Supreme Court precedent. (Docket Entry No. 58 at 74-75). Because Middlebrooks has not made a substantial showing of the denial of a constitutional right, a COA will not issue with respect to this claim.

¶ **III.19.b.** Tennessee's death penalty statue and sentencing instructions do not sufficiently narrow the population defendants eligible for the sentence of death. (Docket Entry No. 27 at 34). The district court concluded that the Court of Criminal Appeals' determination was neither contrary to nor an unreasonable application of federal law as established by Supreme Court precedent. (Docket Entry No. 58 at 74-75). Because Middlebrooks has not made a substantial showing of the denial of a constitutional right, a COA will not issue with respect to this claim.

¶ **III.19.c.** Tennessee's death penalty statue and sentencing instructions permit the jury to impose the death penalty regardless of the mitigating evidence presented. The district court concluded that the Court of Criminal Appeals' determination was neither contrary to nor an unreasonable application of federal law as established by Supreme Court precedent. (Docket Entry No. 58 at 74-75). Because Middlebrooks has not made a substantial showing of the denial of a constitutional right, a COA will not issue with respect to this claim.

**¶ III.19.d.**  Tennessee's death penalty statue and sentencing instructions require the jury to impose the sentence of death if it finds out that the aggravating circumstances outweigh the mitigating circumstances. (Docket Entry No. 27 at 34). The district court concluded that the Court of Criminal Appeals' determination was neither contrary to nor an unreasonable application of federal law as established by Supreme Court precedent. (Docket Entry No. 58 at 74-75). Because Middlebrooks has not made a substantial showing of the denial of a constitutional right, a COA will not issue with respect to this claim.

**¶ III.19.e.**  Tennessee's death penalty statue and sentencing instructions accord too little weight to non-statutory mitigating factors and limit the jury's option to impose a life sentence. (Docket Entry No. 27 at 34). The district court concluded that the Court of Criminal Appeals' determination was neither contrary to nor an unreasonable application of federal law as established by Supreme Court precedent. (Docket Entry No. 58 at 74-75). Because Middlebrooks has not made a substantial showing of the denial of a constitutional right, a COA will not issue with respect to this claim.

**¶ III.19.f.**  Tennessee's death penalty statue and sentencing instructions do not require the jury to make the ultimate determination that death is appropriate. (Docket Entry No. 27 at 34). The district court concluded that the Court of Criminal Appeals' determination was neither contrary to nor an unreasonable application of federal law as established by Supreme Court precedent. (Docket Entry No. 58 at 74-75). Because Middlebrooks has not made a substantial showing of the denial of a constitutional right, a COA will not issue with respect to this claim.

**¶ III.19.g.**  Tennessee's death penalty statue and sentencing instructions do not inform the jury that it may impose a life sentence for reasons of mercy. (Docket Entry No. 27 at 34). The district court concluded that the Court of Criminal Appeals' determination was neither contrary to nor an unreasonable application of federal law as established by Supreme Court precedent. (Docket Entry No. 28 at 74-75). Because Middlebrooks has not made a substantial showing of the denial of a constitutional right, a COA will not issue with respect to this claim.

**¶ III.19.h.**  Tennessee's death penalty statue and sentencing instructions do not require the jury to make findings of fact as to the presence or absence of mitigating circumstances. (Docket Entry No. 27 at 34-35). The district court concluded that the Court of Criminal Appeals' determination was neither contrary to nor an unreasonable application of federal law as established by Supreme Court precedent. (Docket Entry No. 28 at 74-75). Because

25

Middlebrooks has not made a substantial showing of the denial of a constitutional right, a COA will not issue with respect to this claim.

**¶ III.19.i.** Tennessee's death penalty statue and sentencing instructions preempt the jury from being informed of the consequences if it fails to reach a unanimous verdict during the penalty phase. (Docket Entry No. 27 at 35). The district court concluded that the Court of Criminal Appeals' determination was neither contrary to nor an unreasonable application of federal law as established by Supreme Court precedent. (Docket Entry No. 28 at 74-75). Because Middlebrooks has not made a substantial showing of the denial of a constitutional right, a COA will not issue with respect to this claim.

**¶ III.19.j.** The imposition of the death penalty constitutes cruel and unusual punishment. (Docket Entry No. 27 at 35). The district court concluded that the Court of Criminal Appeals' determination was neither contrary to nor an unreasonable application of federal law as established by Supreme Court precedent. (Docket Entry No. 28 at 74-75). Because Middlebrooks has not made a substantial showing of the denial of a constitutional right, a COA will not issue with respect to this claim.

**¶ III.19.k.** The imposition of the death penalty by electrocution as administered by the State of Tennessee constitutes cruel and unusual punishment. (Docket Entry No. 27 at 35). The district court determined that this unexhausted claim was procedurally defaulted for purposes of federal *habeas corpus* review. (Docket Entry No. 58 at 73). Because jurists of reason would not find it debatable that the district court was correct in its procedural ruling, a COA will not issue as to this claim.

**¶ III.19.l.** The imposition of the death penalty is unconstitutional because it is imposed in a discriminatory fashion. Tennessee's death penalty statue and sentencing instructions also permit jurors to avoid taking responsibility for a death sentence. (Docket Entry No. 27 at 35). The district court concluded that the Court of Criminal Appeals' determination of these issues was neither contrary to nor an unreasonable application of federal law as established by Supreme Court precedent. (Docket Entry No. 28 at 74-75). Because Middlebrooks has not made a substantial showing of the denial of a constitutional right, a COA will not issue with respect to this claim.

**¶ III.19.m.** Tennessee's death penalty statue does not establish a meaningful method for an appellate court to review a sentence of death for proportionality. (Docket Entry No. 27 at 35). The district court concluded that the Court of Criminal Appeals' determination was neither contrary to nor an unreasonable application of federal law as established by Supreme Court

26

precedent. (Docket Entry No. 28 at 74-75). Because Middlebrooks has not made a substantial showing of the denial of a constitutional right, a COA will not issue with respect to this claim.

### 13. Whether Middlebrooks Was Denied Full and Fair Post-conviction Proceedings

¶ **III.20.a.** The post-conviction court denied funding for a neurological radiologist. (Docket Entry No. 27 at 35). The district court determined that this claim was not cognizable in federal *habeas corpus*. (Docket Entry No. 58, 75-77). Because Middlebrooks has not made a substantial showing of the denial of a constitutional right, a COA will not issue with respect to this claim.

¶ **III.20.b.** The post-conviction court denied funding for a mitigation specialist. (Docket Entry No. 27 at 35). The district court determined that this claim was not cognizable in federal *habeas corpus*. (Docket Entry No. 58, 75-77). Because Middlebrooks has not made a substantial showing of the denial of a constitutional right, a COA will not issue with respect to this claim.

¶ **III.20.c.** The post-conviction court denied a continuance to complete a full investigation to prepare for a hearing on claims of ineffective assistance of counsel. (Docket Entry No. 27 at 35). The district court determined that this claim was not cognizable in federal *habeas corpus*. (Docket Entry No. 58, 75-77). Because Middlebrooks has not made a substantial showing of the denial of a constitutional right, a COA will not issue with respect to this claim.

### 14. Whether the Death Penalty is Unconstitutional Because Standards are Lacking

¶ **III.21.** There are no standards in Tennessee that govern the decision to seek or impose the death penalty, or for conducting a proportionality review. (Docket Entry No. 27 at 36). The district court determined that this unexhausted claim was procedurally defaulted for purposes of federal *habeas corpus* review. (Docket Entry No. 58 at 77). Because jurists of reason would not find it debatable that the district court was correct in its procedural ruling, a COA will not issue as to this claim.

### 15. Whether the Length of Time That Middlebrooks Has Been Incarcerated under a Sentence of Death Constitutes Cruel and Unusual Punishment

¶ **III.22.** The length of time that Middlebrooks has been incarcerated under a sentence of death constitutes cruel and unusual punishment. (Docket Entry No. 27 at 36). The district

court determined that this unexhausted claim was procedurally defaulted for purposes of federal *habeas corpus* review. (Docket Entry No. 58 at 77-78). Because jurists of reason would not find it debatable that the district court was correct in its procedural ruling, a COA will not issue as to this claim.

**16. Whether Middlebrooks Is Competent to Be Executed**

**¶ III.23.** Middlebrooks is not competent to be executed. (Docket Entry No. 27 at 36). The district court concluded, and Middlebrooks concurred, that this claim is not yet ripe for consideration. (Docket Entry No. 58 at 78). Therefore, a COA will not issue as to this claim.

**II. PETITIONER'S APPLICATION FOR A COA AND MOTION FOR A FULL *DE NOVO* REVIEW**

Following the Sixth Circuit's remand, Middlebrooks filed an application for a COA on July 20, 2006 (Docket Entry No. 64)and a motion for a full *de novo* review on July 21, 2006 (Docket Entry No. 65). The district court will address the latter first.

In his motion for a full *de novo* review, Middlebrooks once again argues that he is no longer subject to the AEDPA, including the doctrine of procedural default, because of the actions of Congress in passing the Relief of the Parents of Theresa Marie Schaivo Act, Public Law No. 109-3 ("the Schaivo Act"). The Sixth Circuit's remand neither authorizes nor requires the district court to conduct a full *de novo* review of the issues in this case. Even if the district court were required to do so, for reasons previously explained, Middlebrooks does not have standing to bring suit under the Schaivo Act, the district court does not have jurisdiction under the Schaivo Act, and the Schaivo Act does not pertain to federal *habeas corpus*. (Docket Entry No. 58 at 19-20). In other words, Middlebrooks' "Schaivo Act" argument is frivolous, just as it was when he first raised it. *See Neitzke v. Williams,*

490 U.S. 319, 325 (1989)(a claim is frivolous if it "lacks an arguable basis in law or fact"). Accordingly, Middlebrooks' motion for a full *de novo* review (Docket Entry No. 65) is DENIED.

Turning its attention to the application for a COA, the district court notes as an initial matter that Middlebrooks quotes *Barefoot v. Estelle*, 463 U.S. 880, 894 (1983), arguing that a COA "is to be granted so long as the petitioner's claim 'is not legally frivolous.'" The "legally frivolous" standard does not govern the issuance of COAs under the Anti-Terrorism and Effective Death Penalty Act (AEDPA). Under the AEDPA, a COA "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The "legally frivolous" and the "substantial showing of the denial of a constitutional right" standards are not the same. The latter, a more stringent standard, is required under the AEDPA's "gate keeping" function previously discussed, *supra* at pp. 5-6. The district court adhered to the standards set forth in § 2253(c) and *Slack* in determining not to issue a COA when the district court denied and dismissed Middlebrooks' petition on July 26, 2005, and has done so again here.

In complying with the Sixth Circuit's Order of remand, the district court reviewed the original record. The district court also carefully considered Middlebrooks' 424-page application which included copies of:

     (1)  his previous motion for an evidentiary hearing (Docket Entry No. 43);

     (2)  a letter dated January 6, 2005 from Lucy Brown, Ph.D. to attorneys Bottei and Swift (Docket Entry No. 64, App. B);

(3) a previously submitted Order in *Jackson v. State of Tennessee and Flora Holland*, No. 3:97-0444 (M.D. Tenn. 2001)(Nixon, J.) (Docket Entry No. 64, App. C);

(4) twenty-nine opinions of the Court of Criminal Appeals (Docket Entry No. 64, App. D, Parts 1-12);

(5) the final Order in the matter of Dr. Harlan (Docket Entry No. 64, App. E);

(6) a newspaper article concerning Dr. Harlan appearing in the August 22, 2005 edition of *The Tennessean* (Docket Entry No. 64, App F);

(7) a two-page excerpt of this Court's opinion in *Henely v. Bell*, No. 98-0672 (M.D. Tenn., Apr. 1, 2003)(Echols, J.)(Docket Entry No. 64, App. G);

(8) Metropolitan Police Department Complaint No. 93-4170 in the shooting death of Shenita Yvette Alexander (Docket Entry No. 64, App. H);

(9) a newspaper article concerning the shooting death of Ms. Alexander appearing in the January 6, 1993 edition of *The Tennessean* (Docket Entry No. 63, App. I); and

(10) juror Alexander's jury questionnaire (Docket Entry No. 63, App. J-K); and

(11) the 9th Circuit's opinion *Irons v. Carey*, 408 F.3d 1165 (9th Cir. 2005) (Docket Entry No. 63, App. M).

Middlebrooks argues vociferously that he is entitled to a COA with respect to all of his claims. However, the arguments advanced and information presented in the application were known to the district court in one form or another and considered at the time it originally ruled that a COA would not issue. Moreover, Middlebrooks' arguments in his application, when viewed in the context of the record in general, and the requirements under the AEDPA in particular, are unpersuasive, irrelevant, conclusory, and/or they miss the mark altogether. Although it is clear that Middlebrooks would like to conduct a federal retrial of his

30

criminal conviction, the purpose of federal *habeas corpus* review under the AEDPA is to "ensure that state court convictions are given effect to the extent possible under the law" – not to conduct a federal re-trial. *Bell*, 535 U.S. at 693.

For the reasons explained above, Middlebrooks has not established that he is entitled to a COA on any of the issues that the district court considered in response to the Sixth Circuit's Order of remand. Accordingly, Middlebrooks' application for a COA (Docket Entry No. 64) is DENIED as to all of his claims.

### III. CONCLUSION

As reasoned herein, a COA will NOT issue as to any of Middlebrooks' Claims. Additionally, the petitioner's Motion for a Full *De Novo* Review (Docket Entry No. 65) and Motion for COA (Docket Entry No. 64) are DENIED.

The Clerk is instructed to return the record to the Sixth Circuit Court of Appeals.

It is so ORDERED.


_____
Robert L. Echols
United States District Judge

31